All rise. Hear ye, hear ye, hear ye. This Honorable Appellate Court of the 2nd District is now in session. Pursuant to adjournment, the Honorable Susan Faye Hutchinson presides. Please be seated. Your Honor, this is the first case of the morning. Call 2-11-5-8-1. Pupil State of Illinois v. Davis. On behalf of the Appellant, Mr. Stephen Klein. On behalf of the Appellee, Ms. Victoria Joseph. All right. Counsel, I apologize for being a little late. I had a commitment this morning my colleagues were waiting to, but thank you very much for waiting. All right. If we are ready, Mr. Klein. Thank you. I'd like to request three minutes for rebuttal, please. Thank you. May it please the Court, my name is Stephen Klein. I represent the Defendant and the Appellant in this case, Aprila Davis. Your Honor, the Defendant filed an appeal in this case appealing the order denying my client's petition to rescind her summary suspension. In fact, what the trial court had done was granted the State's motion for directed finding at the close of the Petitioner Defendant's case. Appeal followed. Is your issue so much a directed finding or is it other issues within the... It's a good question, Your Honor. It's a little bit of both, depending on kind of which issue you're looking at. For example, I think the issue of service is not really a motion directed finding. I do believe that that should have been granted as far as an issue on the Defendant's petition based on the fact that there was no service of the law enforcement sworn report or the notice of summary suspension specifically on the Defendant in this case. It is actually undisputed in the entire case that my client was never served with this notice of summary suspension. Counsel, doesn't 11501F set out the requirements for service? It isn't one of those requirements merely depositing the notice in the mail? Yes, Your Honor. All right. So how do you contend then and what do you rely on to contend that your client had to receive the notice? Two basic principles. The first principle being that it does provide a presumption that once the sworn report is mailed, that in fact was received. That's simple law. However, I do believe it creates a rebuttable presumption in that regard. And the evidence laid by the Defendant in this case effectively rebutted that presumption. I mean, it is beyond a shadow of a doubt that that letter was never received by the client. And we know that for two reasons, technically three. First, the letter came back to the trooper. It's the exact same letter he sent with that information saying that it somewhat bounced back. It's not even clear on the envelope why it wasn't received. The second and third reason being the testimony by my client and her mother that they, in fact, never received this address. I'm sorry, this letter, that their address had never changed and that it wasn't received at any point. But where do you start out with the presumption? If there isn't anything in the statute that would lead you to believe that there is that presumption, is there? Well, Your Honor, you have to look at analogous types of principles. For instance, there is a case, I think it's called Landbarker, where if someone files a speedy trial demand and serves it upon the state and the state says, well, I never got it, that's a rebuttable presumption. If you serve a speedy trial demand on a party, then it can create a rebuttable presumption. Okay, well, it was served. However, they can rebut that presumption by saying it was never served. So I do believe that, yes, there may not be something exactly written in the statute. This is also, Your Honor, really a unique case as well. I do think that the state, Your Honor, is a much stronger argument if the officer said to the trooper, I mailed this wrong report, and that was the end of it. I do believe that that would have a more compelling interest. But in this case, it was mailed, it came back, the trooper did nothing. So now we have, is he really fully complying with the requirements if he knows that his service didn't go back? Has he done what he's supposed to do? Well, what else can he do? But there's nothing that says he has to personally serve it. There's nothing that says the process server has to serve it. There's nothing to even say he has to file an affidavit as, you know, we see attorneys and their administrative staff filing affidavits that they put something in a post office box. So what else should he have done as a matter of law? Well, I do think this is where we start moving into the issue of due process. Because when we're looking at the sworn report, it's important to understand that this is more than just telling someone you were suspended. If your Honor is looking in the trial court record, the notice of summary suspension, it's actually the notice, the way it's carbon copied. So the notice gets sent to the defendant, the law enforcement sworn report gets filed with the courts. It's essentially the same piece of paper. But there's much more information on that piece of paper. And when you're looking at due process, notice is a requirement of it. That's a requirement. When you're going to suspend someone's driver's license, you have to notify the person. The notice is, in fact, so that the party can have an opportunity to file a petition to rescind. All right. Was she prevented from doing that? Was she prevented from doing that? Correct. I would say practically not. But that's because she had a lawyer, and a lawyer who knows and understands these rules. And I think that if there's a difference, if someone who doesn't have a lawyer is going to be treated less fairly than one who does have a lawyer, that's where the due process comes in. And on the sworn report, it says whether or not you tested positive. In this case, it wasn't she went to the station or refused or took a breath test. She submitted to a urine test and had to sort of wait for this piece of paper to come in the mail, which she never did. On this piece of paper, it says how long you have to file a petition to rescind. It explains why you tested positive. It says that the suspension begins on the 46th day after the notice is sent. Well, how does she know when that 46th day starts? If it starts after the day the notice is sent, then she never receives a notice. Well, she'll get a confirmation, right? A confirmation, first of all, does not require all that same information. All it has is a length of the suspension. If you asked how she would know, she would know when she gets the confirmation. If, in fact, she does receive the confirmation. Really, when you're looking at someone's rights who challenges summary suspension, hearing the confirmation is not really a requirement. The notice is. Well, counsel, she was fortunate that she did have a lawyer, and I can only or we can only grant relief to your client without changing the statute, I think. And the statute doesn't require anything more than the police officer did. Do you agree generally with that? Does the statute require more than the police officer did in this case? Correct. I would say yes. All right. I don't think it was properly served. And I do also, my brief, I cited the case of people v. Osborne, which also stands for the principle that you cannot suspend someone unless notice is served. There was no notice served in this case that's undisputed. But the language there is that the defendant to be given notice as required by statute. Well, we know, we just discussed what the statute actually says. So perhaps you're reading Osborne a little too broadly. I don't think so, Your Honor. I think when you're looking at sort of the crux of it, it's due process. Obviously, he has to serve it. But if I'm going to someone's house and I'm supposed to serve them something and I drop it on the way to the house and I just say, oh, I walked away, I mean, I didn't really serve it. I just don't understand how you could say it's one thing if he sends it in the mail and that's all we're here. But he gets it back. So he knows it wasn't served. So how can he comply with that statute if he knows it wasn't served? It's undisputed. He did not serve that. The only thing he could do or would have to do, and I keep mixing my coulds and my woulds, the only thing the statute requires him to do is put it in the mailbox. He's already put it in the mailbox to that address. So if he puts it in the mailbox to the same address, isn't it reasonable to expect it's going to come back again? I don't know. I don't know. The reason why I don't know, Your Honors, there's really no reason someone points to why that letter was not delivered. Even what it says on the letter, and I just want to quote to make sure I give Your Honors the right language here. Returned to sender, not deliverable as addressed. The address on there was her address. Could have called her. He had her phone number. Could have tried to send it one more time. I mean, what if he sent it in the mailbox and then he's looking through the mailbox one day and the letter's just sitting there and it never went out? I mean, he could have done a lot of things. I mean, the issue is what is required of him under the statute. Are you asking us to depart from our holding in Graybeck? No, Your Honor. In Graybeck, we said that Section 501.1 twice refers to law enforcement agency giving notice without regard to when defendant actually receives it. The issue isn't receipt. The issue is the giving of notice, the putting it in the mailbox. He didn't write the wrong address on the envelope. He just put her address on the envelope, he put it in the mail, and it went out. I mean, the post office goofed up, apparently, and that's the only inference I can draw from this. I just, Your Honor, respectfully, I have to disagree. There's a huge distinction between someone putting something in the mail, never hearing it from again, and actually getting it back. I mean, this poor girl could have been driving a suspended license and she had no idea because an officer didn't decide to let her know when she's going to be suspended. Well, if you're an officer, put yourself in the office of a reasonable officer's, he gets this letter back, and the letter says undeliverable, and he does take a step. He says, gee, maybe I had the wrong address. So he checks with the Secretary of State, and, in fact, the address on the Secretary of State is the same address that she gave on all the documents, and that's the address that's on the envelope, and it comes back undeliverable. So, then, is he supposed to conduct some major investigation, get the detectives out there? Absolutely not. Hunt her down? I mean, what's he supposed to do? Send it back. Send it again. Sure. Why not just keep sending it, and then it comes back undeliverable? Send it again. Just keep sending it. If you try it once and you try again, I do think that's a huge distinction between trying once and giving up. You're right, Your Honor. It was the right address. So something weird must have happened. Why not just sending it again? I don't see the problem with that. Because he doesn't know it's the right address. You get something undeliverable, you don't know it's the right address, and you're thinking it's not the right address. You're thinking there's something wrong with this address. Your Honor, if this was simply a letter for Publishers Clearinghouse, but this is someone's notice. This is a fundamental right of due process. This is someone who could be arrested for driving on suspended license because she doesn't know when her suspension is going to start. In fact, she doesn't even know if she's even going to be suspended because the arrest was in, like, November, and this occurred in April. So she's driving around just sort of waiting for the shoe to fall? Is this statute unconstitutional? I'm not saying it's unconstitutional, Your Honor. I just don't believe the officer, and I have to disagree, did not comply with the statute. If he had sent it and it didn't come back, I would absolutely agree with Your Honors that he did what he was supposed to do. But when you get something back, something failed. It did not occur. Service was not made. Therefore, she's entitled to restitution as a matter of law under fundamental due process, and I believe Osborne is clear on that issue. I'd like to turn to another issue. Yes. You allege that the test was administered improperly. Correct. What is there in the statute that would – how do you contend that the reliability of the test results were affected by the collection of the sample? I assume Your Honor is asking about kind of moving down the road of substantial compliance and holding in Bishop. It's a very good question. First, I think it's important to realize that I disagree with that you can have substantial compliance on this issue. First, you either are male or female. It's one or the other. There's no halfway. There's no 19 of a 20-minute observation period. There's no 61 days and, you know, 23 hours in between a test. So there obviously is a failure to comply with that. How could that affect the breath test – I'm sorry, the urine test? I believe in two ways. First, chain of custody. The Illinois rules, they made these rules because they know what are the proper rules to ensure reliability in testing. In this case is an example of how a male administrating a urine test to a female can compromise a chain of custody because Trooper Schramko was 10 to 15 away from her, three feet away from her while she gave the test. All right. The chain of custody, there was nobody else there. They both testified to that. How do we know that she did not put it in the toilet bowl? She testified to that. Your client testified to that, that she didn't do anything to it except drop the urine sample in there and then hand it to him. I also believe, Your Honor, there's an element of prejudice as well. It's not specific to this case, but if someone is not in the same – if a male is in the same room with a female, you could have a shy bladder syndrome as well, and that could create a possible refusal of a urine test where there may not otherwise be one. But the facts were here. They were not in the same room. He wasn't in the cell with her. Correct. She was behind a wall. So that's not the situation we have here. That's correct. But I'm just offering another explanation as to how a male administering a urine test to a female could affect the reliability. You're asking how did it affect the reliability in this case. All right. And I do believe that simply not administering the test, not ensuring that everything was done proper, not ensuring that she didn't urinate on her hand or it got all over the cup or it was the proper sample size. In fact, it ended up not being the proper sample size as well. So are you saying strict compliance is what's required? In this case, yes, I do. I do believe that a urine test is going to be administered to a female, and it should be done by a person of the same sex. I understand that in this case there was no female officer there. In the statute, it provides that a nurse can give this test as well, and it's certainly not uncommon for a trooper or police officer to take an arrestee to a hospital to perform a blood or urine test either. So I do think that is something that could easily have been remedied in this case. There are two sections. There's an A and a B in this particular statutory authority. And it seems to indicate in B that it may be collected by the arresting officer. But A seems to say a sample shall be collected in a manner to preserve the dignity of the individual and to ensure the integrity of the sample. Can't a distinction be made that a person can, in fact, not administer, but can get the sample himself or herself, ensuring the integrity of her dignity, she's behind the wall, and the integrity of the sample because she said, I didn't put it in the toilet, I didn't do anything with it, there wasn't anything else in the room with me, I put it in the cup. You can go ahead, please. Yes, Your Honor. I'm assuming we're out of time. Let me answer your question. We're working a little backwards here because at the time the sample was taken, the trooper did not know any of these things. Now, in cross-examination of my client, that was the state of trying to rebut that presumption. But it doesn't change the fact that that presumption is still there. If you're not there authenticating the sample, if you're not there watching it, I mean, the rule is in place for a reason. Well, then what's the purpose? If you say that the sample actually has to be observed and somebody is watching the process to make sure it's correct, what's the purpose of Section A of that statutory authority? That the person of the same sex shall? No, B is the same sex. Oh, B. A mentions nothing about sex. It simply says a sample of urine shall be collected in a manner to preserve the dignity of the individual and to ensure the integrity of the sample. He knows there's nobody else in the room. He says go and literally pee in this cup. And she does that. So what's the purpose of A? We can't look at the statute and say A has no purpose. What's the purpose of A? You're relying on B, but what's the purpose of A? The purpose of A is also to obviously address possible cruel, unusual punishment concerns and make sure the dignity of the person is preserved because they're obviously in a less than, more private situation of urinating and things like that. Obviously, they have a right to their urine, but they have some rules to make sure that people aren't totally subjected to unfair things. All right. You'll have time for rebuttal. Thank you very much. Thank you, Counsel. Ms. Joseph. Good morning, Your Honors. Counsel, may it please the Court, would you like me to begin with the notice issue? Wherever you're comfortable. Okay. I'll jump into the notice then. As Your Honors pointed out, the officer complied with 501.1F that he shall give notice by depositing the sworn report in the U.S. mail. He did that. The statute does not require he do more, and in fact, Justice Berg did point out that he did do more and confirmed that the address was the same that was on the envelope as it was in the Secretary of State databank. Is there some fairness issue, though, that, you know, normally you get that summary suspension notice right at the time of the arrest because it's alcohol related. This takes some time, and now several months have passed since the November 2011. I mean, she doesn't know anything about this offense generally until sometime in late February, I think. February 28th? As far as the civil action. Correct. Correct. Well, she's not even served with the charges until late February, is she? February 14th or February 28th. It's sometime in February. Well, she was charged with citation and complaint in November 12th, 2011. Okay. But we have the information then confirming. And does she ever, ever see a copy of the notice of summary suspension of the sworn report of the officer? Not the one that was mailed to her by the officer, no, Your Honor. So is there a fairness issue? And, in fact, if I have it correctly, timeline, she is driving. When her hearing comes up, her license is either just about to be suspended. No, when she files, her license is either just about to be suspended or is. She files the day that her license is suspended. And so by the time she has her hearing, her license has been suspended at least 21 days. Isn't there a problem with the intent of the statute if she's supposed to be able to have this hearing before the suspension happens? I think there would be, Your Honor. But in this case, there was also the confirmation that was sent. And by statute, that confirmation was sent to both the trial court and the defendant in the case. So there was notice that there was some action taken that her license would be suspended on April 1st of 2011. And there is nothing. The defendant has not alleged that she did not receive that confirmation. Does she ever affirmatively say that she did in the testimony? I do not believe there was ever a question asked about that. As far as that goes, if there are any, I can move on to the timeliness of the hearing. Why do we have the regulation where the same-sex person takes the urine sample? Why is it in there? I think it does have something to do with the intent of the statute, which is to get the wording correctly, Your Honor. To promote the dignity of the person. To preserve the dignity of the person. But the practicalities are you're not always going to have an officer of the same sex working, unfortunately, when somebody is picked up. Just the practicalities of how hiring goes in police offices. We can't regulate that. At least there is no regulation that there's always a female officer working at a certain time. But you're relying on substantial compliance. Yes, Your Honor. You're conceding there was not strict compliance, correct? If the administrative code is interpreted that the officer is also the arresting officer, because it mentions in the first sentence of B that the arresting officer, which would be Trooper Schramka in this case, can authenticate the sample. And then it says another law enforcement officer can as well. So if we're including the officer as both the arresting officer or another officer, then the statute is not complied with. However, if the officer is only referring to another person besides the arresting officer, then we would say the statute was complied with. The regulation that the same-sex person administered the test was complied with under one part of that regulation? Because of how they separate out in the first sentence of B that there's an arresting officer or another law enforcement officer. Yeah. Well, I mean, it's clear that only one person took the urine sample. That is correct. It was an arresting officer and he was a male. He was a male. Okay. There was nobody else involved? There was nobody testified that there was anybody else involved. He took her to the cell with the wall. She urinated and handed the sample to him. What does the word collective mean in that statute? Is there anything that would prevent a person? Collecting his or her own sample as long as the integrity of the sample is preserved. In other words, the person giving the sample would also be the one to quote collected. Looking at it as you're the actual process is collection versus the handing of the sample as the collection. Is that what you're asking? Can it be interpreted in more than one way when it says collected by? It could be, Your Honor. Because there could be the collection of the actual urine in the cup versus the collection of the cup by the officer. You're disagreeing with the Henry test, the Henry case then, correct? Because the Henry case says that that list is exclusive. Because phlebotomists weren't on the list and they said that that list is exclusive and be as to who shall collect. I think Justice Enoff is asking as far as the actual giving, like physically giving the sample urinating versus collecting as in you are taking the cup from me as meaning collecting. And as far as the people listed in Henry, those are the people who actually have to take the cup once it has been filled. And I'm not disagreeing with that, Your Honor. But I don't think it does spell out in the statute what collection, how collection is explicitly defined. Well, again, we have two sections of this statutory authority or this administrative code authority. Yes. It's an A and a B. The B is pretty clear. I mean, well, I guess I'm saying it was to me and maybe not so much as we're discussing it here. The sample may be collected. And having been in criminal court and, you know, put people on probation and they had to, with urine drops, back in McHenry County, somebody stood right there while they did that so that they didn't pull out someone else's from their pocket or their shoe or wherever it could be located. Versus the first A, a sample shall be collected in a manner. That seems to, I'm saying collected, not who takes the cup, but who's watching the collection. And A doesn't require anybody to watch the collection, it appears. Well, it doesn't, there's nothing explicitly in any of the sections that say the officer or person designated to collect has to physically watch the person urinate. Well, what about who can authenticate the sample? That, you know, how do you authenticate something? You see it. I mean, that's one way to do it. Is there another way? By somebody saying, this is it, I suppose, but that's not, that's sort of our scenario here. But what the issue is, when does a same-sex person have to be present, in my mind? If you're requiring the person to actually watch, then I think you would not be preserving the dignity of the defendant if it was another sex. Well, okay.  Yes. However, here, under the practicalities of what occurred, her dignity was protected. She did testify as to, I urinated in this cup, nothing else touched it, and I handed it directly to the officer. Counsel mentioned something that the officer may not have known these things at the time this actual transaction was happening, and he learned about it afterwards. Is there anything that indicates that, that this was a surprise to the officer as he testified? I don't believe so, Your Honor. And I think we also have to look, as far as the issues in the third and fourth argument of the defendants, that this was just the defendant's case. So if this was set back for a remand, the state would still be able to put on their case to rebut the prima facie. So I don't think, based on the testimony that was given on the defendant's case before the directed finding, that that is clarified one way or the other. Could I touch briefly on the timeliness of the hearing? As far as the timeliness of the hearing on the petition to rescind, the defendant filed the petition to rescind before there was notice, before there was confirmation, before anything existed in this case. The only thing that existed at the time of the petition to rescind was the criminal action. This is a completely separate civil action. And this would be analogous to a defendant in federal court filing a 12B6 motion to dismiss a pleading that hasn't been filed yet by the plaintiff. So we consider this an anticipatory petition because it did not follow the statute where the petition must be filed after notice that they would have had to file to reinstate the petition. The trial judge correctly dismissed it in December of 2010, and therefore the 30 days did not start running until the petition was refiled. Can you address whether there's probable cause to arrest the defendant for, or reasonable grounds I should say, for driving under the influence of drugs? Well, driving under the influence of drugs, as I'm sure you're aware, Your Honor, if there's any amount in the urine, blood, or bodily fluid of a list of subscribed controlled substances, it is strict liability offense. So I think in this case where the officer had the ruling paper, had the fresh cannabis, smelled the fresh cannabis, and the defendant admitted that she had smoked cannabis around noon, that there was... What time was this arrest? 8.30 p.m. So what evidence is there in the record that that would still be in her system, in her blood? I think he had reasonable grounds that, based on the totality of the evidence, that there would be some amount in her bodily fluids at the time. There was no indicia of intoxication, correct? There does not have to be. No bloodshot... No, no, no. My question is though, under the section above that, I think it's 85 maybe, there's no indication of bloodshot eyes, slurred speech... As far as I know, based on the testimony within the defendant's case, there was no evidence of intoxication. So you're strictly relying on probable cause to arrest for A6? I would say under these circumstances, as the testimony presented in the defendant's case, yes, Your Honor. Let's go back quickly to the timeliness. There's also, I think, another argument made that since the notice, the sworn officer's report was sent out February 14th... Yes, Your Honor. ...maybe that's my date, where I have my dates wrong, that as of that particular occasion, the clock started even though she didn't get it. Is there, you know, what's the state's position on that issue? The state would disagree, Your Honor, because there was no properly filed petition to rescind. At the time that she filed the petition to rescind in November, that was an anticipatory action which was not properly filed under the statute. So when it was dismissed in December of 2010, there was nothing in existence. That she was not allowed to file the petition in anticipation that there might be some civil action taking place. So the clock, Your Honor, the people assert that the clock would not start until April 1st when she filed the petition to reinstate and the motion to rescind statutory summary suspension. Your position is that that petition was a nullity when filed? Yes, Your Honor, because there was no civil action in existence at that time. Because it is distinguished from Moreland and the other cases that there they were waiting on a confirmation that the sworn report was given immediately. Here there was nothing in existence at the time. Even Schaefer states that it's once the driver refuses or fails testing. And in this case, she didn't fail the testing until February. Any more questions? Thank you, Your Honors. Mr. Klein, do you have some rebuttal? Yes, ma'am. Thank you. I just wanted to start out by pointing out that in the state's brief on page 16 in the reply brief about three-quarters of the way down, they seem to suggest that they admit that the officer failed to comply with section 11-501.2, which governs the admissibility of urine result tests by stating, though the officer's failure to comply with section 11-501.2. So the state is essentially admitting, yes, that Illinois' administrative code was not complied with. I would like to talk about the probable cause situation as well, since I didn't get to that earlier. The defendant strongly asserts there was no probable cause to arrest Ms. Davis for driving under the influence of drugs for essentially two reasons. Number one, the officer was not qualified to give an opinion that she was under the influence of drugs. There seems to be this misinterpretation of cases like Jack Wheath and Workman that somehow an officer only needs an opinion at a trial stage. And in order to sustain a conviction or find someone guilty beyond a reasonable doubt, that's when someone needs it. But for probable cause, well, then the rules are somewhat relaxed. And the defendant thinks that's a complete misrepresentation of the law. The law is not about the level of proof. It's about ability to even form an opinion. If someone doesn't have the requisite knowledge to even form an opinion about something, they can't say the degree that they're right or wrong about it. Well, he'd been trained. He'd gone to classes. Isn't that correct? A few classes. Well, is there something that actually prescribes how many hours are needed? Where is the line drawn? Well, Your Honor, there is no set line currently being drawn because we don't recognize DRE. It is a case-by-case basis. In this case, he did not have the proper knowledge, and not only does his training not reflect that, he didn't do anything. He didn't perform the proper field sobriety test for DUI cannabis. He didn't check her Newport eye convergence, Romberg test. The field sobriety and the tests you're mentioning are discretionary, correct? They're not. The legislature has tried to make them mandatory for a very long time, but today and on this day they were not mandatory. Is that correct? Yes. All right. And he is talking to her, wondering why her lights aren't dimming, and she's explaining. And, okay, the explanation works, and maybe, but now he smells something. He says he smells something. And then she admits, what more does he need? Well, it's not enough just to say someone had consumed cannabis. And I do believe, I didn't cite in my appeal, but since we're going in this sort of direction, the case of McPeak Health, that simply having a drug in someone's system is not enough for impairment. So I think what else he would have needed. Not enough to prove beyond a reasonable doubt impairment. That's correct, Your Honor. The issue in this case, as focused by counsel, is whether there's probable cause for a six arrest. I agree, Your Honor, that stands for beyond a reasonable doubt, but I think the rationale is the same. Simply just because someone has something in their system does not necessarily mean they're impaired by it. And I don't think there was any other evidence to indicate that. We had no backdriving, not just the light situation, but everything that occurred when the officer was following Ms. Davis, the way she responded to the lights, the way she's answering the questions. The state mentions rolling papers, and rolling papers can easily be used for other non-drug needs. And it's very weak. There's just not a whole lot there. No field sobriety tests were done, and I understand it doesn't need to do the field sobriety tests. The same way a police officer, when detecting an odor of an alcohol, doesn't need to ask the driver if he's had anything to drink. But it certainly helps determine probable cause if he's able to make that determination. And I just don't think, based on his training and based on the evidence there, there was enough to sustain a probable cause in this case. If there was a crime for driving with any amount of alcohol in your breath, blood, or urine, theoretically you wouldn't need fields if the officer smelled the odor of alcohol and then the person said, yeah, I had a few drinks today. Isn't that probable cause to arrest for any amount of alcohol in your breath, blood, or urine? In your Honor's very tightly construed hypothetical, I would agree with you. However, that's not the way the law is in this case. So I would have to disagree that that would not apply to the facts in this case because it's simply not the law at this time. DUI drugs require more elements of proof to prove impairment than DUI alcohol. Not only do they have to show that the person was impaired, but that the person's driving was impaired. And I don't think we have any of that here. Under 8.6 you have to show that? Not under 8.6, no, Your Honor. Okay. That's what my hypothetical was going toward. It was going toward an 8.6 analogy to alcohol. But how does he know that it's still in our system? That's the question. Well, he doesn't. But it's probable cause. Again, he's looking at the totality of the circumstances. It's not necessary to have sufficient to convict. He must have a reasonable – there must be a reasonable inference that a crime has or is about to be committed. And if she admits that she smoked marijuana or that – well, first she said the day before, and then ultimately she said that day. I still don't understand what more he needs for probable cause. He needs impairment. That's what he needs, and that's what was not present here. Zero impairment. And driving a vehicle that she knows is not properly equipped should not be taken into account? Well, I don't necessarily think she knows it's not properly equipped. She knows she has lights that are brighter, but didn't necessarily know that that was a violation of the law. Well, if they don't – if you can't go from, you know, high beams to low beams when you're behind a car or when you're approaching a car, I think anybody who drives has a reasonable – has reasonable knowledge that that's a problem. The way I understood the way her lights were set up was that the lights weren't working at all. And when the person set them on, they were simply brighter. I don't necessarily think they were just constantly high beams on. And that's, you know, simply the car she was given. She probably can't afford something else, and this is what she's stuck with. I don't necessarily think that that's strong evidence of impairment in this case. Your Honors, I see I'm out of time. Thank you very much. Again, I appreciate the opportunity to talk. Thank you. All right. Thank you, counsel, for argument. The case will be taken under advisement. We will make a decision in due course. And we are going to stand in recess for a few minutes and let the other attorneys get ready. And we'll be back.